# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JOHN V. MEYER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNUM LIFE INSURANCE )<br>   COMPANY OF AMERICA, et al., )<br>)<br>Defendants. )<br>_____) | CIVIL ACTION<br><br>No. 12-1134-KHV |

## MEMORANDUM AND ORDER

John V. Meyer brings suit against UNUM Life Insurance Company of America and UNUM Group (collectively "UNUM"), Niska Gas Storage, LLC Plan ("the Plan") and Niska Gas Storage, LLC ("Niska") for relief under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. Plaintiff seeks to (1) recover disability benefits from the Plan and UNUM pursuant to 29 U.S.C. § 1132(a)(1)(B) (Count I); (2) impose a statutory penalty on Niska for failure to provide documentation pursuant to 29 U.S.C. § 1132(c)(1) (Count II); and (3) obtain injunctive relief against Niska pursuant to 29 U.S.C. § 1132(a)(3) (Count III). This matter is before the Court on Niska Defendants' Motion To Dismiss The First Amended Complaint With Brief In Support (Doc. #22) filed July 2, 2012. In their joint motion, the Plan and Niska move to dismiss plaintiff's amended complaint because (1) the Plan is not a proper defendant in Count I, plaintiff's denial of benefits claim, because it did not make the decision to deny plaintiff benefits; (2) Count II does not state a plausible claim for relief; and (3) Count III for injunctive relief is not appropriate because legal relief is available to plaintiff in his benefits claim against UNUM.[1] Alternatively, the Plan and Niska argue that the amended complaint should be dismissed or stricken and plaintiff should be required

---

[1] UNUM is not a party to this motion.

to re-plead to comply with Rule 8, Fed. R. Civ. P. For the following reasons the Court sustains in part and overrules in part the Plan and Niska's motion to dismiss and overrules their motion to strike.

**Legal Standards**

In ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible – and not merely conceivable – on its face. Id. at 679-80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Iqbal, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions. See id.; Hall v. Bellmon, 935 F.3d 1106, 1110 (10th Cir. 1991). Plaintiff bears the burden of framing his complaint with enough factual matter to suggest that he is entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements. Twombly, 550 U.S. at 556. Plaintiff makes a facially plausible claim when he pleads factual content from which the Court can reasonably infer that defendants are liable for the misconduct alleged. Iqbal, 556 U.S. at 678. Plaintiff must show more than a sheer possibility that defendants have acted unlawfully – it is not enough to plead facts that are "merely consistent with" defendants' liability. Id. (quoting Twombly, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand. Iqbal, 556 U.S. at 678. Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not "shown" – that the pleader is entitled to relief. Id. at 1950. The degree of specificity necessary to

2

establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case. Robbins v. Okla., 519 F.3d 1242, 1248 (10th Cir. 2008) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232-33 (3d Cir. 2008)).

Rule 12(f) motions are a generally disfavored, drastic remedy. See Nwakpuda v. Falley's, Inc., 14 F. Supp. 2d 1213, 1215 (D. Kan. 1998); Sierra Club v. Tri-State Generation & Transmission Ass'n, Inc., 173 F.R.D. 275, 285 (D. Colo. 1997). A motion to strike will usually be denied unless the allegations have no possible relation to the controversy and may prejudice one of the parties. See Nwakpuda, 14 F. Supp. 2d at 1215; Fed. Deposit Ins. Corp. v. Niver, 685 F. Supp. 766, 768 (D. Kan. 1987). If the record reveals any doubt as to the importance of the allegations to be stricken, the Court should deny the motion. Rajala v. McGuire Woods, LLP, No. 08-02638, 2011 WL 91948, at *2 (D. Kan. Jan. 11, 2011).

**Factual Background**

The amended complaint alleges the following facts.

Plaintiff began working in the natural gas industry in 1987, and from 1999 to 2006 he worked for Manchester Gas Storage in Oklahoma. Through mergers and acquisitions, that company's operations became Niska's operations. In 2008, Niska recruited plaintiff to work at its Salt Plains Storage facility. Plaintiff began working there as an Operator on October 15, 2008. The Operator position requires constant physical activity including maintenance work, housekeeping, monitoring and repairing large machines to ensure the safe, reliable and efficient operation of gas storage facilities and fields.

The Plan, in which plaintiff is a participant, is an employee welfare benefit plan as defined by ERISA, 29 U.S.C. § 1002(1). The Plan includes long-term disability ("LTD") benefits. Niska is the plan administrator but it has delegated to UNUM the fiduciary responsibility of making benefit determinations.

Plaintiff has been disabled under the terms of the Plan since March 4, 2010, when he suffered a cerebral artery ischemic stroke. He awakened in the middle of the night and felt like he could not walk and was disoriented. When he woke up the next morning, he could not talk and his right side was immobilized. His girlfriend found him lying on the kitchen floor and called EMS. Plaintiff first went to the emergency room at Anthony Medical Center and later that day transferred to Via Christi St. Francis Hospital in Wichita for treatment of an acute stroke. On March 8, 2010, plaintiff had extracranial-intracranial bypass surgery. Six days later he was discharged to a rehabilitation facility for aggressive rehabilitation. The discharge summary from his hospital stay contains the following statements:

1. "2-D echocardiogram was done to rule out embolic source of stroke. . . ."

2. "On 3/10/10, transesophageal echocardiogram [TEE] was done in order to rule out any potential embolic source of stroke and no intracardiac mass or clot was seen as well as no vegetation."

3. "A TEE was performed to further ensure there was no embolic source of the initial stroke, and after the TEE he was extubated without any further issues."

Amended Complaint (Doc. #20) at 8, ¶ 36. During the summer following his stroke, plaintiff received treatment for atrial fibrillation, which included drugs and electrical shock treatment and minimally invasive heart surgery. Despite his sustained rehabilitation efforts, the right side of plaintiff's body remains weak; he continues to struggle with speech; he has a hard time remembering things; he has lost coordination; and he is barely able to walk.

Plaintiff became covered under the Plan 30 days after he began his employment with Niska, on or about November 14, 2008. Plaintiff received a packet of information about benefits when he began working for Niska. One of the documents, which described plaintiff's LTD coverage, stated that he would be automatically enrolled for both short- and long-term disability, and that the latter was insured by UNUM. This 2007 "Benefits Overview" described those benefits to include 66.67%

4

of an employee's salary, with benefits beginning after a 180-day waiting period;[2] a maximum benefit of $10,000 per month; and cost of living adjustments. Plaintiff is entitled to receive monthly LTD benefits until his 65th birthday, which is May 15, 2021.

Plaintiff had not received a summary plan description ("SPD") before he suffered his stroke. In June of 2010, he spoke several times with Niska employee Jennifer Johnson in an effort to obtain LTD plan documents and get assistance in making a claim for benefits. Plaintiff also asked for a copy of the policy itself. From that time until November of 2011, however, plaintiff only received a UNUM document entitled "Long Term Disability Income Protection Insurance Plan Highlights" for Niska Gas Storage, LLC Policy No. 125243. Plaintiff later received documents from UNUM which indicated that as of November 1, 2009, this policy was no longer effective.

On July 28, 2010, Niska faxed plaintiff a UNUM application for LTD benefits. The following month, plaintiff completed the application and submitted it to UNUM, along with a questionnaire that his primary care physician answered. On September 2, 2010, in connection with plaintiff's LTD application, Niska faxed to UNUM an Employer's Statement of plaintiff's earnings. One week later, UNUM told Johnson that it planned to review plaintiff's file for preexisting conditions, a process which generally takes 30 to 45 days.[3] In a letter dated December 6, 2010, UNUM denied plaintiff's claim for LTD benefits on the ground that he had a preexisting condition which either "caused, contributed to, or resulted in" his stroke. Plaintiff appealed the decision, and

---

[2] With a disability date of March 4, 2010, plaintiff's benefits became payable on August 4, 2010.

[3] The UNUM plan does not cover disabilities which are caused by, contributed to by or result from a participant's preexisting condition. The Plan defines a preexisting condition as one for which the participant received medical treatment, consultation, care or services including diagnostic measures, or took prescribed drugs or medicines in the six months before the effective date of coverage, and the disability begins in the first 24 months after the effective date of coverage unless the participant has been treatment-free from the condition for 12 consecutive months after the effective date. See Doc. 1-2 at 5.

5

on July 15, 2011, UNUM denied the appeal.

On October 19, 2011, plaintiff's counsel made a written request of Niska for copies of three documents: the Employee Benefit Plan, the insurance policy and a copy of the SPD. Niska received the request on October 24, 2011 and replied one month later by sending plaintiff a copy of the 2010 version of "Benefits Overview" for Salt Plains Storage, LLC. It also suggested that plaintiff contact UNUM for the documents he had requested. Plaintiff did so, and UNUM sent him a copy of the insurance policy. The description of LTD coverage in the 2007 and 2010 "Benefits Overviews" are identical except that the latter refers to a 24-month exclusion for preexisting conditions which did not appear in the former. The exclusion in the 2010 "Benefits Overview" is also inconsistent with the language of the Plan, as the Plan has an exclusion that is broader than 24 months.

Other inconsistencies exist. The title page of the insurance plan which plaintiff received from UNUM bears a copyright date of 1993, an effective date of March 23, 2007 and an amendment stamp of November 1, 2009. Niska did not notify plaintiff of any amendments to the LTD plan, but information that UNUM provided indicates that an amendment became effective while plaintiff was a participant, before his stroke. The overview which Johnson faxed to plaintiff in June of 2010 seemingly described the pre-amendment policy. On April 3, 2012, plaintiff's counsel contacted Niska once again to inquire further about changes to Niska's "Benefits Overview" summaries since 2008, when plaintiff began his employment. Niska's counsel responded that there had been no benefit changes to any UNUM policies since their implementation on March 23, 2007, and therefore the documents which Niska had provided were complete.

In his amended complaint, plaintiff alleges that the Plan and UNUM wrongfully denied him LTD benefits, that Niska is liable for statutory penalties for failure to provide plaintiff an SPD and that Niska is subject to injunctive relief.

**Analysis**

6

**I.  Motion To Dismiss**

Although the Plan and Niska filed a joint motion, they are not jointly named in plaintiff's claim; Count I sues the Plan and Counts II and III sue Niska. As to each count, however, defendants argue that plaintiff has failed to state a claim upon which relief can be granted.

**A.  Count I**

Count I asserts a traditional claim for benefits under 29 U.S.C. § 1132 and names the Plan and UNUM as defendants. See 29 U.S.C. § 1132(d)(1) ("An employee benefit plan may sue or be sued under this subchapter as an entity."). While the Plan concedes that it is an entity that can sue and be sued under ERISA, it argues that it cannot be liable to plaintiff because UNUM is the party that decided and paid benefit claims, and that UNUM is the only proper defendant. Plaintiff maintains that, according to the plain language of the statute and under applicable case law, the Plan is a proper defendant.

Defendants' position finds no support in case law in the Tenth Circuit or in this Court. Although these courts have not addressed the issue in a factually similar case, dicta suggests that plaintiff may indeed maintain his claim against the Plan. See Geddes v. United Staffing Alliance Employee Med. Plan, 469 F.3d 919, 931 (10th Cir. 2006) (because ERISA allows claims only against plan and plan administrator, court lacks authority to enter money judgment against separate claims administrator); Randles v. Galichia Med. Group, P.A. ERISA Benefit Plan, No. 05-1374, 2006 WL 3760251, at *15 (D. Kan. Dec. 18, 2006) (plan is proper defendant, not employer, in suit seeking LTD benefits where insurer made denial of benefits decision); Miller v. Pension Plan for Employees of Coastal Corp., 780 F. Supp. 768, 773 (D. Kan. 1991) (employer not proper party in pension benefits claim because ERISA only permits suit against plan).

The Second Circuit Court of Appeals considered this issue in Chapman v. Choicecare Long

7

Island Term Disability Plan, 288 F.3d 506 (2002). There, a participant brought an action for LTD benefits against her employer-sponsored plan. UNUM administered the plan, accepting or rejecting claims and paying benefits. UNUM had denied plaintiff's claim upon its filing and its appeal. In response to plaintiff's complaint, the plan moved for summary judgment on grounds which included the argument that it was not a proper party defendant. 288 F.3d at 508-09. The plan made essentially the same argument that the Plan makes here: under the terms of its policy with UNUM, the insurance company promised to pay LTD benefits to qualified claimants, so the plan should not be a defendant. The district court entered summary judgment for the plan.

The Second Circuit vacated the judgment and rejected the plan's argument that it was not a proper party defendant. The Second Circuit cited the language of Section 1132 which permits a benefits claim against a plan, and noted that the statute clearly allows a plan to be held liable in its own name for a money judgment. The Court continued with the following:

> We see no reason why such a liability should not arise upon a beneficiary's claim of entitlement to receive benefits from the Plan. The Plan's argument to the effect that it may not be sued because it has contracted with First UNUM to make payments to Plan beneficiaries is wholly unsupported by the language of the statute.

Id. at 509. Of course, the Second Circuit holding does not preclude the plan administrator from also being a proper party defendant,[4] a fact noted in a district court case which followed Chapman and likewise rejected a plan's effort to be dismissed as a defendant on the ground that the insurer had the sole authority to make claim determinations under the LTD plan. Spears v. Liberty Life Assurance Co. of Boston, 885 F. Supp. 2d 546 (D. Conn. 2012). As the district court further noted, its decision did not prejudice the plan because plaintiff cannot recover twice, both from the plan and from the insurer. Id. at 556.

---

[4] See 288 F. 3d at 509 (in recovery of benefits claim, only plan, administrator and plan trustees may be held liable) (quoting Leonelli v. Pennwalt Corp., 887 F.2d 1195, 1199 (2d Cir. 1989)).

8

Based on the foregoing, the Court concludes that the Plan is a proper party defendant. Defendants' motion to dismiss is overruled with respect to Count I.

**B. Count II**

Count II seeks a statutory penalty under 29 U.S.C. § 1132 for Niska's failure to provide plaintiff a copy of the SPD within 90 days of his becoming a participant. Niska moves for dismissal because plaintiff has not shown that the failure prejudiced him and because the amended complaint fails to plead sufficient facts to support an award of such penalty.

ERISA requires a plan administrator to furnish a copy of the SPD to each participant within 90 days of the individual becoming a participant. 29 U.S.C. § 1024(b)(1)(A). If the administrator fails to comply and the participant later requests a copy of the SPD but does not receive it within 30 days, the administrator is subject to statutory penalties under the following section:

> Any administrator . . . (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c). Plaintiff alleges that Niska was required but failed to furnish a copy to him on or about February 13, 2009. He further alleges that he made several requests of Niska for LTD plan documents in June of 2010, but he did not receive a copy of the SPD until November of 2011 when Niska provided it in response to his attorney's request.

Niska's arguments are premature on a motion to dismiss. The amended complaint alleges that Niska did not provide plaintiff a copy of the SPD within 90 days of his becoming a participant in the plan. Neither did Niska comply within 30 days to what the Court assumes was an oral request. Niska's arguments with respect to prejudice and willfulness are more appropriately directed at

9

whether and in what amount it will be subject to a statutory penalty.[5] The amended complaint alleges facts sufficient to state a claim against Niska under the statutory penalty provision, Section 1132(c). See Crotty v. Cook, 121 F.3d 541, 547 (9th Cir. 1997) (plan administrator's failure to furnish SPD within 90 days of participation and after oral request violates plain terms of Section 1132(c)); Davis v. Liberty Mut. Ins. Co., 871 F.2d 1134, 1138-39 (D.D.C. 1989) (Section 1024(b)(1) imposes no requirement that SPD request be written). Defendants' motion to dismiss is overruled with respect to Count II.

### C. Count III

In his third and final count, plaintiff seeks injunctive and other equitable relief against Niska for breach of fiduciary duty. Plaintiff alleges that Niska (1) failed to make disclosures about circumstances which might have caused plaintiff to be denied benefits; (2) failed to disclose information which participants needed for their own protection; (3) made false or misleading statements about the Plan and benefits; and (4) delegated non-delegable obligations of disclosure and production. Plaintiff invokes 29 U.S.C. § 1132(a)(3), the catchall provision, and asks the Court to order Niska to comply with various ERISA duties and enjoin it from violating other ERISA obligations. Niska argues that injunctive relief is not appropriate because plaintiff's claim for benefits provides an adequate remedy.

Plaintiff seeks relief under two enforcement sections of ERISA, Section 1132(a)(1)(B) and Section 1132(a)(3). Niska correctly states that a plaintiff's exclusive recovery for injury due to non-payment of employee benefits is under the former section, and that an additional or alternative claim for equitable relief under the latter is unavailable. See Varity Corp. v. Howe, 516 U.S. 489, 512, 515 (1996). Plaintiff argues that Count III stands on its own and seeks only prospective injunctive relief.

---

[5] An award of penalty under Section 1132(c) is discretionary. 29 U.S.C. § 1132(c); Moothart v. Bell, 21 F.3d 1499, 1503-06 (10th Cir. 1994).

10

However, this case is indisputably a claim for LTD benefits, and Count III is based on the same conduct that underlies Count I. As the Supreme Court made clear in Varity, Section 1132(a)(3) is a catchall provision that acts as a safety net by offering appropriate equitable relief for injuries which have no other adequate remedy. 516 U.S. at 512.

The additional, appropriate relief that Section 1132(a)(3) offers is not authorized if plaintiff possesses a colorable claim under Section 1132(a)(1)(B). Lefler v. United Healthcare, 72 F. App'x 818, 826 (10th Cir. 2003). Niska concedes that plaintiff has a claim for benefits under Section 1132(a)(1)(B). See Niska Defendants' Motion To Dismiss The First Amended Complaint With Brief In Support (Doc. #22) at 11. The contentions in Count III address the same conduct as those in Count I, and plaintiff could be made whole by the relief he seeks in Count I. Accordingly, the claims set forth in Count III are foreclosed. Defendants' motion to dismiss is sustained with respect to Count III.

## II.     Motion To Strike

Defendant asserts an alternative motion to strike plaintiff's amended complaint on the ground that it does not comply with the requirement of Fed. R. Civ. P. 8(a) that a claim for relief must contain a "short and plain statement of the claim showing the pleader is entitled to relief." Defendants presumably are referring to factual allegations that concern UNUM's handling of plaintiff's claim.

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The function of the rule is to avoid the expense of time and money that arises from litigating spurious issues by dispensing with those issues before trial. Rajala v. McGuire Woods, LLP, No. 08-02638, 2011 WL 91948, at *2 (D. Kan. Jan. 11, 2011) (quoting Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983)). Motions to strike are generally disfavored, however, and are usually not

granted absent a showing of prejudice to the moving party. Semsroth v. City of Wichita, No. 06-2376, 2008 WL 45521, at *2 (D. Kan. Jan. 2, 2008). The amended complaint contains detailed allegations as to UNUM's handling of plaintiff's claim for benefits, but it raises no spurious issues. Moreover, defendants have not shown prejudice. The Court declines to strike the amended complaint and overrules defendants' alternative motion to strike.

For the foregoing reasons, the Court sustains in part and overrules in part Niska Defendants' Motion To Dismiss The First Amended Complaint With Brief In Support (Doc. #22) filed July 2, 2012. The motion is **OVERRULED** as to Counts I and II and **SUSTAINED** as to Count III, and the alternative motion to strike is **OVERRULED**.

**IT IS SO ORDERED.**

Dated this 8th day of April, 2013 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge